

Dated: July 25 2007

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 06-33109 |
| | ) | |
| Timothy W. Whitaker, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's motion to dismiss for abuse brought under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 29] and Debtor's objection [Doc. # 33]. A hearing was held that Debtor, his counsel and counsel for the United States Trustee ("UST") attended in person and at which the parties had the opportunity to present testimony and evidence in support of their positions. In addition the court granted Debtor leave to supplement the record with documentation of the terms of the 401(k) plan in issue. [Doc. # 38].

The court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. *See* 28 U.S.C. § 157(a) and (b)(1). Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and the arguments of counsel as well as testimony and evidence offered by the parties, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless he converts the case to Chapter 13.

**BACKGROUND**

Debtor Timothy W. Whitaker ("Debtor") is single and has one minor child who does not live with him. Debtor is a salaried employee of General Motors at the GM PowerTrain facility in Toledo. He filed his Chapter 7 petition on October 30, 2006. Debtor's petition states that his debts are primarily consumer debts. His bankruptcy schedules show unsecured nonpriority debt in the amount of $85,027, secured debt in the amount of $160,529, and minimal, if any, nonexempt assets. Debtor's Schedule I shows total monthly income after payroll deductions of $3,643, which income does not include $269.42 withheld monthly as a payroll deduction in payment of three 401(k) plan loans. His Schedule J shows total monthly expenses in the amount of $3,560, including an automobile installment payment of $515, leaving monthly net income of approximately $83.

As required under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Debtor also completed and filed with his petition Official Form B22A, Statement of Current Monthly Income and Means Test Calculation. He reports total current monthly income ("CMI"), as that term is defined in 11 U.S.C. § 101(10A), in the amount of $6,931, which is above the median family income for a family of one in Michigan.[1] Debtor's means test calculation includes deductions totaling $6,950, which include, among other things, a $285.53 deduction under "Other Necessary Expenses: mandatory payroll deductions" on line 26 of Form B22A[2] and a deduction in the amount of $42.92 for payment of the debt secured by Debtor's automobile. Debtor reports no monthly disposable income on lines 50 and 51 of Form 22A and indicates that a presumption of abuse under § 707(b)(2) does not arise.

Debtor is a participant through his employment in the General Motors Savings-Stock Purchase Program, a 401(k) plan. At the hearing, Debtor offered a loan document for the first of three outstanding loans from his plan account that was taken in the amount of $4,200 in December 2002. The document shows that payments in the amount of $39.36 are to be made twice per month and that the loan will be paid in full on December 11, 2007. Debtor testified that he also obtained loans from his 401(k) plan account in January 2005 in the amount of $2,468 and in January 2006 in the amount of $3,661. His Schedule J shows that monthly payroll deductions are being made in the amount of $59.08 in payment of the second loan and $133.62 in payment of the third loan.

In accordance with the court's order, after the hearing Debtor submitted the Summary Plan

---

[1] Although Debtor lives in Michigan, the court granted his motion authorizing venue in this court.

[2] Although there is a $16.11 discrepancy between the monthly amount of Debtor's payroll deduction for 401(k) loan repayments set forth in his Schedule I and Form B22A, this discrepancy has no bearing on the outcome of this motion.

2

Description document for the General Motors Savings-Stock Purchase Program. [Doc. #38]. According to the Summary Plan Description, "participation in the Program is voluntary" and participants "may discontinue Program participation at any time." [Doc. #38, p.11 ("Eligibility")]. The Summary Plan Description provides that contributions are elective up to certain limits set by law and that loans may be made from assets in a participant's account. [*Id.* at 11, 15]. It further provides that "[r]epayment of a loan is made through after-tax payroll deductions" and that a default in the loan agreement will result in the participant being "irrevocably deemed to have received a distribution of assets in an amount equal to the outstanding balance of the loan, plus any accrued interest, calculated to the date the loan is deemed distributed." [*Id.* at 16].

The UST argues that the deduction for payments to Debtor's 401(k) plan on account of the three loans are improper under the means test and that, if not included as a deduction, a presumption of abuse arises under § 707(b)(2).[3] Although the UST also argues under § 707(b)(3) that the totality of the circumstances of Debtor's financial situation demonstrates abuse, because the court agrees that a presumption of abuse arises in this case, it does not address the § 707(b)(3) argument.

## LAW AND ANALYSIS

As amended by BAPCPA, § 707(b)(1) provides that the court, after notice and a hearing, "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." Under § 707(b)(2) and (3), Congress provided two methods by which a party may prove abuse. Section 707(b)(2)(A) sets forth an extensive "means test" calculation to determine whether there is a presumption of abuse. The means test calculation requires a debtor to subtract certain allowed deductions from the debtor's CMI. Where the means test calculation results in sufficient disposable income such that a presumption of an abusive filing arises, a debtor may rebut that presumption by demonstrating "special circumstances" as set forth in § 707(b)(2)(B).

In this case, the narrow issue that the court must decide is whether Debtor's 401(k) plan loan repayments are a proper deduction under the "Other Necessary Expenses" provision of §

---

[3] The UST also argues that Debtor's telecommunication expense is unreasonably high. Specifically, the UST challenges Debtor's cell phone expense of $92. Debtor testified credibly regarding the necessity of this expense in order to effectively perform his job. In any event, even if this expense is not allowed, a presumption of abuse arises only if Debtor's deduction for his 401(k) plan loan repayments is improper. Thus, the court addresses only the 401(k) loan repayment deduction in this opinion.

3

707(b)(2)(A)(ii)(I).[4]  That section provides in relevant part as follows:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides. . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I). The categories of Other Necessary Expenses specified by the Internal Revenue Service are found in section 5.15.1.10 of the Internal Revenue Manual ("IRM"). *In re Barraza*, 346 B.R. 724, 730 (Bankr. N.D. Texas 2006). Although the IRM includes no specific category itemizing 401(k) plan loan repayments as Other Necessary Expenses, it does include a category for "Involuntary Deductions" to the extent that the expense "is a requirement of the job; i.e. union dues, uniforms, work shoes." IRM § 5.15.1.10. Thus, Form B22A includes on line 26 a deduction for "Other Necessary Expenses: mandatory payroll deductions" and instructs debtors to enter "the total average monthly payroll deductions that are required for your employment, such as mandatory retirement contributions, union dues, and uniform costs."

Debtor contends that he properly deducted his loan repayments on line 26 since his 401(k) plan requires payments to be made through payroll deductions. Thus, he argues that the payroll deductions are mandatory.[5] However, as one court concluded, this argument "ignores the further definition of 'mandatory payroll deduction' as one required for the job. . . ." *In re Lenton*, 358 B.R. 651, 657 (Bankr. E.D. Pa. 2006). In *Lenton*, the court explained:

> [Form B22A] does not speak of mandatory payroll deductions for loan repayments but mandatory payroll deductions required for employment such as retirement contributions. The term "mandatory retirement contributions" implies a situation where participation in a retirement plan is a condition of the job, i.e., the original contributions are a deduction that an employer would take from all employees. This is consistent with the Manual, which requires that an involuntary deduction "must be a requirement of the job."

*Id.* In *Lenton*, as in this case, the debtor's contributions to his 401(k) plan account were discretionary and therefore not a requirement of his job. Because the loan repayments would increase the debtor's retirement

---

[4] Debtor also argued alternatively that the 401(k) loan repayments constitute a secured debt that may be deducted from his CMI under § 707(b)(2)(A)(iii). However, he concedes that even if such a deduction is permitted, because the calculation under this subsection is an average of the total amount due over a period of sixty months, Debtor will not "pass" the means test and a presumption of abuse would arise. Thus, the court does not address the issue in this opinion.

[5] The Summary Plan Description provides that, in the case of a participant's default in making payments, he is deemed to have received a distribution from his account. It is not clear to the court whether a participant can direct the plan to stop the deductions and choose to suffer the tax consequences of having his loan deemed a distribution. If that is possible, the payroll deductions are not mandatory. However, the parties did not address that issue, and the court does not rely on that reasoning in this opinion.

4

benefits and were, in effect, contributions to the debtor's retirement account, the court concluded that "[t]he fact that Debtor took a loan against those funds under loan terms that mandate repayment by payroll deduction does not change the nature of the funds when Debtor repays them." *Id.* at 658. Consequently, the court found that the loan repayments did not qualify under the IRM category of "involuntary deductions." *Id.*; *see In re Barraza*, 346 B.R. at 730 (explaining that "[t]he consequence of a debtor's failure to comply with the requirement to pay union dues, wear a particular uniform, or wear certain shoes is, in all likelihood, loss of employment" while "the consequence of the debtor defaulting on his 401(k) loans is that the loans are treated as taxable distributions" and finding that the requirement to repay 401(k) loans was not a job requirement).

The court finds the reasoning in *Lenton* persuasive. Debtor's participation in the General Motors Savings-Stock Purchase Program is discretionary, as is his taking a loan against his plan account. Neither are requirements of his job with General Motors. As in *Lenton*, the court construes "requirement of the job" as contemplated in the Involuntary Deductions category specified in the IRM to mean a requirement imposed on anyone performing that job. As repayment of a 401(k) plan loan is not such a requirement, he is not entitled to deduct his 401(k) plan repayment expenses as a mandatory payroll deduction on line 26 of Form B22A.

Debtor alternatively argues that he is entitled to deduct the payments as "Other Expenses" on line 56 of Form B22A, which instructs debtors to "[l]ist and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)." Form B22A does not, however, provide for a deduction from CMI for expenses listed on line 56. The Advisory Committee explains this line as follows:

> The forms do not provide for means test deductions from CMI for expenses in categories that are not specifically identified as "Other Necessary Expenses" in the Internal Revenue Manual. However, debtors may wish to claim expenses that do not fall within the categories listed as "Other Necessary Expenses" in the forms. Part VII of the Chapter 7 form and Part VI of the Chapter 13 form provide for such expenses to be identified and totaled. Although expenses listed in these sections are not deducted from CMI for purposes of the means test calculation, the listing provides a basis for debtors to assert that these expenses should be deducted from CMI under § 707(b)(2)(A)(ii)(I), and that the results of the forms' calculation, therefore, should be modified.

Advisory Committee Note to Official Forms 22A, 22B, & 22C at ¶ C(5).

The court notes, however, that the provisions of the statute govern over the Official Form and § 707(b)(2)(A)(ii) expressly limits deductions for other necessary expenses to those that fall within the

5

categories specified by the Internal Revenue Service. Nevertheless, to the extent that it may be proper to deduct additional expenses that do not fall within those categories, the court does not find that Debtor's 401(k) plan loan repayments are a proper deduction. Congress specifically addressed the treatment of retirement benefits and the repayment of loans from ERISA qualified plans in several other contexts. *See* 11 U.S.C. § 362(b)(19) (providing that the automatic stay does not apply to withholding from a debtor's wages to the extent that the amounts withheld and collected are used solely for payments relating to such a loan); 11 U.S.C. § 541(b)(7) (excluding from property of the estate any amount withheld from an employee's wages or received by an employer from an employee for payment as contributions to a qualified retirement plan); 11 U.S.C. § 1323(f) (excluding any amounts required to repay a loan from a qualified retirement plan from the definition of "disposable income"). The court finds it telling that Congress did not provide for special treatment of qualified retirement plan loan repayments in the Chapter 7 means test calculation and declines to do so under the rubric of "other expenses" on line 56 of Form B22A. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The court's decision does not contravene any Congressional policy to protect retirement funds. As one court concluded, "[w]hile . . . Congress has clearly evidenced an intent to protect 401(k) loan repayments, excluding them as a necessary expense under the means test is not inconsistent with that goal." *In re Lenton*, 358 B.R. at 660. In *Lenton*, the court explained:

> First, 401(k) loan repayments are finite; a loan will eventually be paid off. Second, a Chapter 13 case is prospective, i.e., it encompasses a debtor's current and future financial circumstances for a period of three to five years. . . . Excluding 401(k) loans from the means test evidences a "wait and see" approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that doing so might result in a zero payment plan. However, because, as here, 401(k) loans might be paid off within the commitment period of a Chapter 13 case, the ability to increase the monthly plan payment would direct newly available funds to creditors. Such an approach serves both the Congressional intent to protect retirement contributions and "ensure that debtors repay creditors the maximum they can afford," a primary goal of BAPCPA. H.R. Rep. 109-31, pt. 1 at 1, as reprinted in 2005 U.S.C.C.A.N. 88, 89 (2005).

*Id.*

In this case, the loan document relating to Debtor's first 401(k) plan loan, on which he makes monthly payments of $78.72, indicates that the loan will be paid off in December 2007. Although loan documents for the two remaining loans are not before the court, the repayment period for 401(k) plan loans

6

is generally no longer than five years. 26 U.S.C. § 72(p)(2)(B) (requiring such loans to be repaid within five years unless the loan is used to acquire the participant's principal residence); Doc. #38 at 16. Assuming that both remaining loans have a repayment period of five years, Debtor's second loan will be paid off in January 2010 and his third loan will be paid off in January 2011, both payoffs to occur within a Chapter 13 plan's five year applicable commitment period for an above median income debtor. Thus, the *Lenton* rationale is particularly relevant to Debtor's situation as additional funds will in fact become available that could be used to fund a Chapter 13 plan.[6]

Accordingly, the court concludes Debtor's 401(k) plan loan repayments may not be deducted from CMI under the means test. Excluding the repayments as an allowable expense under Debtor's means test calculation, there is a presumption that granting Debtor a discharge would be an abuse of the provisions of Chapter 7. Debtor has not demonstrated, or even argued that, special circumstances exist that rebut that presumption.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b) [Doc. # 29] be, and hereby is, **GRANTED.** Debtor is granted thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case or the case will be dismissed by separate order of the court.

---

[6] In addition to the 401(k) plan repayment funds, it appears that other funds are or will soon be available to Debtor that could also be used to fund a Chapter 13 plan. Debtor lists on Schedule J an automobile installment payment of $515 but shows on Form B22A that, as of October 30, 2006, the date of filing, the debt secured by his vehicle totals only $2,575.52 ($42.62 X 60 months). Thus, it appears that his vehicle loan, if not already paid off, will be paid off relatively soon,.

7